# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: September 29, 2021

\* \* \* \* \* \* \* \* \* \* \* \* \*
SCOTT YOUNGMARK,                    \*
                                    \*
            Petitioner,             \*        No. 17-1431V
                                    \*
v.                                  \*        Special Master Gowen
                                    \*
SECRETARY OF HEALTH                 \*        Ruling on Entitlement; Influenza
AND HUMAN SERVICES,                 \*        Vaccine; Shoulder Injury Related to
                                    \*        Vaccine Administration; ("SIRVA");
                                    \*        Table Injury.
            Respondent.             \*
                                    \*
\* \* \* \* \* \* \* \* \* \* \* \* \*

*Joseph Michael Russel,* Von Briesen & Roper, S.C., Milwaukee, WI, for petitioner.
*Jennifer Leigh Reynaud,* U.S. Department of Justice, Washington, D.C., for respondent.

### RULING ON ENTITLEMENT[1]

On October 4, 2017, Scott Youngmark ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2]  Petitioner alleges that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of receiving an Influenza ("flu") vaccination in his left arm on March 29, 2017.  Petition (ECF No. 1).

After a review of the record as a whole including medical records, an affidavit, and briefing by the parties, and for the reasons set forth below, I find by preponderant evidence that the petitioner is entitled to compensation.

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.**  The Court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7.  Before the opinion is posted on the Court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  An objecting party must provide the Court with a proposed redacted version of the opinion.  *Id.*  **If neither party files a motion for redaction within 14 days, the opinion will be posted on the Court's website without any changes.**  *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act").  Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

## I.      Procedural History

Petitioner filed his petition on October 4, 2017, alleging he sustained a left shoulder injury caused by the flu vaccine administered on March 29, 2017.  Petition at Preamble. Petitioner filed an affidavit on October 4, 2017 based on his own personal knowledge. *Id*. The case was initially referred to the Special Processing Unit ("SPU").  Prior to the case being reassigned to my docket, the parties had entered a 15-week stipulation order, which was withdrawn on October 2, 2020. (ECF No. 53).

On December 7, 2020, respondent filed his Rule 4(c) Report, stating that compensation should be denied because petitioner failed to demonstrate that he suffered a Table Injury. Respondent ("Resp.") Report ("Rept.") at 1. Specifically, respondent stated that petitioner had a history of left shoulder pain, and petitioner's carpal tunnel release surgery and altercation with his cellmate were the more likely the causes of his left shoulder injury. Resp. Rept. at 12-13. Petitioner filed a response to respondent's Rule 4(c) report on February 17, 2021.  Petitioner's ("Pet.") Response to Rule 4c. (ECF No. 59).

On April 23, 2021, I held a status conference in this case, where I explained that the record demonstrates that petitioner experienced left shoulder pain on the same day he received the vaccination, and his symptoms and treatment course were that of typical SIRVA cases. Scheduling Order (ECF No. 61).  Further, I noted petitioner's bilateral carpal tunnel syndrome was not caused by the vaccine and was not the cause of his shoulder pain.  *Id.*  Given the respondent's unwillingness to re-engage in settlement negotiations, I ordered respondent to file a motion for a ruling on the record.  *Id.* at 2.

On May 14, 2021, respondent filed a motion for a ruling on the record. ("Resp. Mot.") (ECF No. 62). Petitioner filed a response to respondent's motion on June 17, 2021 ("Pet. Brief") (ECF No. 63).

This matter is now ripe for adjudication.

## II.      Evidence Submitted

### a.  Petitioner's Medical Records Pre-Vaccination

Petitioner has extensive medical records from before the vaccination, and it is noted that his right shoulder pain started after a 2010 fall on ice. Pet. Ex. 5 at 196. The physical and occupational therapy progress notes started on March 13, 2015, and under medical diagnosis it noted "R shoulder pain and ROM." *Id*.  All of the long-term goals in the physical and occupational notes include improvement of the right shoulder.  Pet. Ex. 5 at 199.  The physical and occupational therapy progress notes list seven (7) visits from March 13, 2015 to May 26, 2015.  Pet. Ex. at 195.

On June 10, 2015, the provider noted that petitioners "ROM to both shoulders limited to raising arms to shoulder height." Pet. Ex. at 75. The provider noted "chronic shoulder pain," and

the provider would inquire if the physical therapy could be renewed. *Id*. Later that month on June 29, 2015, it is noted that the petitioner's "L shoulder [was] improving gradually." Pet. Ex. 3 at 72.

At a medical appointment on January 1, 2016, it is noted that petitioner's range of motion in bilateral shoulders was within normal limits. Pet. Ex. 3 at 67. On January 15, 2016, petitioner went to the Health Services Unit ("HSU") for bilateral shoulder pain, with an intensity of a 6 out of 10. *Id*. On February 8, 2016, the petitioner received a flu vaccine in his left deltoid. Pet. Ex. 19 at 1079. On May 3, 2016, petitioner had good ROM of right shoulder, with pain and crepitus [with] elevation." Pet. Ex. 3 at 53. A few months later, in August 2016, petitioner was seen again and complained that his "R shoulder popped," and received a steroid shot in his right shoulder on August 4, 2016. Pet. Ex. 3 at 52.

On February 23, 2017, petitioner was diagnosed with bilateral carpal tunnel syndrome, the left being greater than the right. He had a left carpal tunnel release on that date. Pet. Ex. 5 at 152. He was seen the following day for a follow up. Pet. Ex. 3 at 43. On March 9, 2017, Petitioner restarted physical therapy after the carpal tunnel release surgery, and for treatment of his "L wrist pain." Pet. Ex. 5 at 148. On March 16, 2017, petitioner revisited the surgeon for a follow-up appointment. *Id*. at 141

### b. Petitioner's Medical Records Post-Vaccination

On March 29, 2017, petitioner was administered a flu vaccine in his left deltoid. Pet. Ex. 3 at 36. The flu shot was given at approximately 2:35 p.m. on March 29, 2017. Petitioner returned to the HSU approximately six hours later, at 8:35p.m., with complaints of swelling, bruising, and pain from the administration of the flu vaccine. *Id*. The record states that petitioner "arrive[d] holding l[eft] arm," and stated, "I can't move it." *Id*. The Progress Notes noted that the "l[eft] deltoid slightly warm, [] swelling, [] lump at insertion site, bruising noted around insertion site…skin warm + dry…altered skin integrity, muscoskeletal pain/discomfort…instructed to take Tylenol as needed." Pet. Ex. 3 at 36.

On March 30, 2017, petitioner submitted a health service request noting the flu shot received the previous day and described that "…a couple hours after being injected, my shoulder became very sore, it's now all red and swollen, and I cannot move my shoulder, the pain is excruciating, feels like burning and tearing." Pet. Ex. 10 at 542. Later that day, during a PT session, Petitioner said that "…[left] shoulder is painful, tight." Pet. Ex. 5 at 144.

On March 31, 2017, petitioner returned to the HSU. The progress notes indicate that Petitioner was "…seen in HSU [] room to check l[eft] shoulder (deltoid area) very painful + can't move his arm…l[eft] deltoid [with] approx. 18cmx15cm area of ecchymosis ranging in color from blue/purple to red…[] warmth or redness in area [] sign of infection. Area not hard or raised. Unable to check PROM …[patient] resisting any movement. Seen + evaluated by Dr. Manlove – hematoma from flu shot. Instructed [patient] to apply warm compress to area followed by gentle ROM – exercises demonstrated. Has Naproxen that he can take for discomfort. [Patient] states he understands instructions." Pet. Ex. 3 at 37.

On April 2, 2017, petitioner submitted a health service request and noted that "I saw Dr. last week about the bruising on my left shoulder. It's not only a vessel that is wrong. I cannot move my shoulder at all. I need immediate care. I'm in excruciating pain, + have no mobility, + can't even dress myself." Pet. Ex. 10 at 531.

Petitioner had a follow-up on April 7, 2017.  Pet. Ex. 3 at 37.  It was noted that petitioner explained  "I am in excruciating pain from my shot."  *Id.*  A note after a physical exam of petitioner's left shoulder stated, "[patient's] l[eft] deltoid area shows healing from influenza vaccine given 3-29-17. [Patient] resists range of motion to left arm/shoulder. However, exhibits equal hand grasp…continue ice/warm compress application. Alteration in comfort r/t muscoskeletal impairment. [Patient] requested appoint [with] MD to discuss pain treatment options."  Pet. Ex. 3 at 37.  Later that day, petitioner submitted an information request writing, "The issue I have is I have no Doctors appointment since my shoulder injury occurred on 3-29-17. The pain I have has been ignored and my shoulder injury is more than just a vessel being hit from the shot I was injected with. I'm asking for a thorough Drs examination and a proper diagnosis of why I'm unable to move my shoulder, also better pain meds, also a referral to P.T for therapy I'm in extreme pain nothings being done." Pet. Ex. 10 at 533.

On April 10, 2017, petitioner had an altercation with his cell mate, at which time he was "[p]unched repeatedly in [the] face." Pet. Ex. 3 at 38.  In a document requested by the Security Director on April 27, 2017, S. Schmidt, Ph D. noted that "Youngmark and his cellmate got into an altercation in which both harmed the other." Pet. Ex. 20 at 1098.

Prior to receiving the vaccination at issue, petitioner had undergone a carpal tunnel release surgery on February 23, 2017. Pet. Ex. 5 at 152.  As a result of the surgery, he was receiving ongoing physical and occupational therapy, which started on March 9, 2017. Pet. Ex. 5 at 144-48.  April 13, 2017 is the first time the left shoulder is noted in the Physical/Occupational Therapy Progress notes after the flu vaccination, and it describes that the "l[eft] wrist continues to [be] moderately painful.  The l[eft] shoulder has been more of an issue than anything…l[eft] shoulder is extremely limiting, adhesive capsulitis is suspected." Pet. Ex. 5 at 144.

On April 17, 2017, petitioner submitted a health service request in which he wrote, "I've seen 2 nurses already about my frozen shoulder, now I need to see the Dr. for an examination and his recommendations. Why am I just being left in pain to suffer." Pet. Ex. 10 at 517. Petitioner returned to the HSU on April 19, 2017 and stated that he was "…not…able to move his l[eft] shoulder," claiming it was frozen after he had a flu shot.  Pet. Ex. 3 at 39.  Petitioner explained that he was able to dress himself, which was noted as an improvement from April 2, 2017.  Pet. Ex. 10 at 531.

On April 30, 2017, petitioner submitted another health service request inquiring about when he would be seen by the doctor for "…[his] frozen shoulder, the naproxen isn't helping [the] pain and I need a PT referral, it's been over a month now + still have no mobility." Pet. Ex 10 at 524.

On May 11, 2017, the Physical/Occupational Therapy progress notes describe that his left shoulder continues to be painful and stiff and that while the left shoulder ROM was improving, it was still limited. Pet. Ex. 5 at 144.

On May 21, 2017, petitioner submitted a health service request saying he has "…been waiting 2 months to see the Dr. for my frozen shoulder," and that he is "…in excruciating pain…severe pain 24/7." Pet. Ex. 10 at 504. The next day on May 22, 2017, Petitioner saw a doctor and it was noted that Petitioner "continues to c/o pain and [] ROM [left] shoulder…limited elevation at shoulder [with] tenderness…adhesive capsulitis [at] shoulder…ENT consult…continue PT." Pet. Ex. 3 at 35. Later that day, WCI Prescriber's order [] record "f/u for shoulder pain in 2 mo[nths]." Pet. Ex 4 at 93.

On May 28, 2017, petitioner declined carpel tunnel surgery on his right wrist because "…l[eft] shoulder is frozen and if he had it done would not have use of either arm." Pet. Ex. 3 at 35.  Petitioner continued to have range of motion  issues with his left shoulder.  On June 5, 2017, petitioner received a physical exam, and it was noted that he had "Limited ROM l[eft] shoulder." Pet. Ex. 2 at 19. A few days later on June 8, 2017, PT notes that while "He has been trying to stretch the l[eft] shoulder more, which is painful, but he is having less pain at rest." Pet. Ex. 5 at 145.

On June 17, 2017, petitioner submitted a health service request regarding being cuffed in the front "because of [his] frozen shoulder injury."  Pet. Ex. 10 at 491.  Petitioner was denied his request to be cuffed in the front because, "previous radiology report shows normal Rt shoulder – not medically indicated." *Id.* On June 19, 2017, PT notes say that Petitioner "…is having continued significant l[eft] shoulder pain…ROM is improving very slowing, pushing HEP [Home exercise program] is the key for returning functional use of the l[eft]." Pet. Ex. 5 at 145. On June 22, 2017, Petitioner submitted  a health service request inquiring about the cuffing protocol relating to his left shoulder and wrote "it's my left shoulder, I'm doing physical therapy for frozen shoulder, which means I can't move my left, even being cuffed from behind my back. Medical records show I already had cuff in front, it needs to be updated." Pet. Ex. 10 at 494. The HSU denied the request again to be handcuffed in front because x-ray imaging demonstrated a "normal shoulder x-ray." *Id.*  In response to the denial, on June 27, 2017, Petitioner wrote a letter "[t]o HSM:"

> So your saying I don't have anything wrong with my left shoulder. I was diagnosed with adhesive capsulitis from a flu shot vaccine on 3/29/2017. I have been seen by several of your nursing staff including Nurse Block, Dr. Manlove and Tom Ruffin. Dr. Manlove order[ed] physical therapy for the past 2 ½ months. I go about once a week for this injury. P.T. therapist Ed treats me, he knows my diagnoses he diagnosed me also and he is still treating me. Are you not reading the correct medical records? I had a different shoulder injury about 2 yrs ago on my right shoulder this is not what I'm talking about. Your staff nurse Tom Ruffin caused this injury to me. He gave me the shot too high up on my shoulder, he wrote the restriction himself. I want this taken care of immediately, there's no way I can be cuffed from behind. I want to know why there are no medical

records about this you need to speak with P.T. therapist, x-rays don't show this injury. Pet. Ex. 10 at 493.

On June 28, 2017, Petitioner submitted another health service request inquiring about which medical records indicate that he was seen for the injury to his "…left shoulder from getting [the] flu vaccine." Pet. Ex 10 at 471. WCI physical therapy notes from July 2017 to August 2017 mention that Petitioner is trying to stretch his left shoulder, and that his improvement was minimal. Pet. Ex. 5 at 145-46.

On August 1, 2017, Petitioner's prescriber order record note "MRI left shoulder – chronic pain and adhesive capsulitis." Pet. Ex. 4 at 91. Petitioner received a steroid injection in his left shoulder on October 5, 2018. Pet. Ex. 22 at 1301-03. The MRI was completed on November 8, 2017. Pet. Ex. 19 at 1029. The MRI showed evidence of "mild anterior distal supraspinatus tendinosis," and "mild acromioclavicular arthrosis." Pet. Ex. 19 at 1027.

### c.   Petitioner's Affidavit

Petitioner submitted an affidavit in support of his petition, executed on October 4, 2017. Pet. Affidavit ("Aff.") at 1.  Petitioner explained that on March 29, 2017 he received a flu vaccination in his left shoulder and following the vaccine administration petitioner experienced "severe pain and lack of mobility in [his] left shoulder and arm area, and [he] was unable to use [his] left arm." Pet. Aff.  at ¶ 5.   He stated that later that day he returned to the HSU holding his arm, saying, "[I] can't move it." *Id*. at ¶ 6.  Over the next few days, he continued to submit health service requests relating to the painful feelings in his left shoulder, and when he was seen in the HSU, they noted an "…18 cm x 15 cm area of ecchymosis ranging in color from blue/purple to red." *Id*. at ¶ 8.

In early April 2017, petitioner submitted a Health Service Request and an information request about the pain in his left arm, and his inability to get a doctor's appointment to address the injury. *Id*. at ¶ 9.  Over the next few weeks, the physical therapy notes indicate that his ROM was "extremely limited," and by mid-May the physical therapy notes say his shoulder was "significantly limited." *Id*. at ¶ 12.

In June 2017, petitioner submitted two health service requests inquiring about a special cuffing procedure because of his "frozen shoulder injury." *Id.* at ¶ 26. Both requests were denied because it was not medically indicated.  *Id.*  On June 27, 2017, Petitioner wrote a letter to HSM outlining the health care providers that he had seen about his left shoulder and reiterating the need to change the cuffing protocol because "x-rays don't show this injury." *Id*. at ¶ 28.  By August 2017, the WCI progress notes indicate that petitioner had "[a] frozen shoulder. No improvement," and on August 1, 2017 the prescribing order included an order for an MRI of the left shoulder. *Id* at ¶ 34-5. The affidavit was submitted before the MRI of the left shoulder took place.

Petitioner stated that he believes the left-shoulder injury and resulting pain was caused-in-fact by the March 29, 2017 flu vaccination.  *Id*. at ¶ 38. At the time of the affidavit, the pain had persisted for more than 6 months. *Id*. at ¶ 39.

### III.    Parties' Arguments

#### a.    Respondent's arguments

Respondent argues that petitioner has failed to show that his "alleged injury is, in fact, a shoulder injury related to vaccine administration," and that petitioner has not met his burden of proof.  Resp. Motion ("Mot.") at 12-13. Specifically, he argues that petitioner's medical record reflects a history of left shoulder pain beginning in early 2015.  *Id*. at 13.  Respondent also argues that an MRI of petitioner's left shoulder completed on November 8, 2017, seven (7) months after the vaccination, was consistent with degenerative joint disease of the shoulder and not a SIRVA injury. *Id*.

Additionally, respondent argues that petitioner's recent carpal tunnel release surgery and serious physical altercation with his cellmate roughly two weeks after his vaccination contributed to petitioner's left shoulder injury. *Id*. at 14. Further, respondent argues that 7 months after the vaccination, petitioner received another flu vaccine and argues that his pain was no longer severe and/or petitioner did not relate his shoulder pain to the March vaccination.  *Id*.

Finally, respondent argues that 10 months after the vaccination, on September 29, 2018, petitioner submitted a health service request indicating his *right* should still had not healed, and only fixed that error the day after.  *Id*.  Therefore, respondent argues that the March 29, 2017 vaccination was not the cause of petitioner's alleged shoulder injury and therefore petitioner cannot establish all of the criteria for a Table SIRVA claim.

#### b.    Petitioner's arguments

Petitioner argues that he is eligible for a Table SIRVA as a result of receiving the flu vaccine in his left arm on March 29, 2017.  Pet. Brief (ECF No. 63).  Petitioner argues that the onset of his pain was within 48 hours of receiving the flu vaccination, specifically the pain was approximately 6 hours following the vaccine administration. Pet. Brief at 2. He argues that he consistently attributes the pain in his shoulder to the vaccination. Pet. Brief at 2.   Petitioner notes through Health Service Requests, WCI Progress Notes, information requests, and WCI Physical Therapy notes that the left shoulder pain began after he received the flu vaccination on March 29, 2017.  Pet. Brief at 2-5.  Petitioner argues that petitioner's left shoulder injury is clearly outlined in the medical records. Pet. Brief at 6-7.

In his response to respondent's motion, petitioner argues that his medical records from June 10, 2015 describe that "ROM to both shoulders [were] limited to raising arms to shoulder height." Pet. Resp. to Rule 4(c) 3 at 5-6.  Eighteen days later the progress notes demonstrate that Petitioner's left shoulder was improving gradually and by January 15, 2016, petitioner's left shoulder had normal range of motion. Pet. Resp. to Rule 4(c) at 6. The reference to Petitioner's left shoulder spans only a six-month period, which was more than a year before the vaccination. *Id*. Petitioner argues that the limited references to petitioner's left shoulder in the pre-vaccination record do not negate the record that Petitioner had no shoulder pain or restricted range of motion in the year directly before the vaccination. Finally, petitioner argues that the medical records post-vaccination clearly show that he suffered a SIRVA injury as a result of his vaccination.

## IV.     Applicable Legal Standard

To receive compensation through the Program, petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury listed on the Vaccine Injury Table—corresponding to a vaccine that she received, or (2) that she suffered an injury that was actually caused by a vaccination. See §§ 300aa-13(a)(1)(A), 11(c)(1); *Capizzano v. Sec'y of Health & Human Servs.,* 440 F.3d 1317, 1319-20 (Fed. Cir. 2006).

In this case, petitioner alleges that he suffered a Table Injury.  Thus, petitioner must show that he suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table.  If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown by the government that the injury was caused by some other factor other than the vaccination.  § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(i); §300aa-14(a); § 300aa-13(a)(1)(B).

SIRVA is an injury listed on the Vaccine Injury Table ("Table").  The QAI explains that, "SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm.  These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction.  SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.)." 42 C.F.R. 100.3(c)(10).  The SIRVA criteria under the Qualifications and Aids to Interpretation are as follows:

A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) no history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*  The flu vaccine is a covered vaccine, and the Table specifies that for a Table SIRVA, onset must occur within 48 hours.  *Id.* at §100.3(a)(VIII).  Respondent argues that there is not preponderant evidence demonstrating the requisite facts to establish compensation, specifically through the first and fourth QAI criteria.  Resp. Mot. at 13.

### a.     No history of pain, inflammation, or dysfunction of the affected shoulder.

In a pre-vaccination medical record from March 13, 2015, it was noted that petitioner fell on ice in 2010 and that was the beginning of his right shoulder pain. Pet. Ex. 5 at 196. The initial

physical and occupational therapy evaluation from March 13, 2015 indicate that petitioner has "right shoulder pain and stiffness [with] limiting function." *Id.*

Respondent cited an HSU record from June 10, 2015, in which petitioner claimed both his right and left shoulder were painful, and the provider observed limited range of motion. Pet. Ex. 3 at 75-6.  Petitioner points to a record 18 days later that noted that petitioner's left shoulder was "improving gradually," with "↑ [increasing] ROM and ↓ [decreasing] pain." Pet. Ex. 3 at 72. Respondent cited to pieces of the record that include the left shoulder more than a year before the vaccination and there are no records that indicate that petitioner suffered any pain or limited range of motion leading up to his vaccination.

Respondent incorrectly uses the medical records from March and June 2015, which mention the injury, as evidence that petitioner had a history of pain in his left shoulder. However, there was no evidence that petitioner was experiencing left shoulder pain from January 15, 2016 until the day he received the flu shot on March 29, 2017. Pet. Ex. 4 at 67. The January 15, 2016 notation showed pain both shoulders with "ROM in bilateral shoulders. *Id.*  Instead, the medical records demonstrate that he was experiencing reduced range of motion and strength in his *right* shoulder and petitioner received the vaccine at issue in his *left* arm.  For example, on May 3, 2016, it was noted that petitioner was in physical therapy for "R" shoulder pain.  Pet. Ex. 4 at 113.  There was no mention of petitioner's left shoulder or arm.

As such, petitioner has presented preponderant evidence that any prior left shoulder pain had resolved well before he received the March 29, 2017 flu vaccination and at the time of the flu vaccination, he was not suffering from any pain, inflammation, or dysfunction of the left shoulder.

### b.  Pain occurs within the specified timeframe (48 hours).

Based on the record as a whole, I find there is preponderant evidence that the onset of petitioner's shoulder pain was within 48 hours of his March 29, 2017 vaccination.  On March 29, 2017, the petitioner was given a flu vaccination in his left deltoid at approximately 2:35 p.m. EST. Pet. Ex. 3 at 36.  Petitioner returned to the health unit approximately six hours later, at 8:35 p.m., "holding l[eft] arm," stating "I can't move it." *Id.*  Petitioner additionally complained of swelling, bruising, and pain at the vaccination site, and the provider observed that his left deltoid was "slightly warm…bruising noted around insertion site." *Id.*, Pet. Ex. 10 at 542. The HSU documented an "18 cm x 15 cm area of ecchymosis ranging in color from blue/purple to red." *Id.* at ¶ 8.

Respondent has not made any specific argument on this criterion.  As such, petitioner has established onset of pain within 48 hours of receiving his March 29, 2017 flu vaccination.

### c.  Pain and reduced range of motion confined to the shoulder

Based upon a review of the entire record, I find that Petitioner's pain and reduced range of motion were limited to his left shoulder.  Respondent asserted that Petitioner had "a history of left shoulder pain beginning in early 2015," and "…a physical exam in March 2015 showed reduced strength and range of motion in both shoulders, with his right being worse than his left."

Resp. Rep. at 2.  Respondent argued that petitioner's injury was not confined to his left shoulder based on medical records, but those records start in March 2015 and end in January 2016.  Pet. Ex. 5 at 197.  Report at 3-4.

Petitioner asserted that the medical records respondent is relying upon to establish petitioner had a pre-existing left shoulder condition only reference petitioner's other medical conditions and are unrelated to his shoulder.  Pet. Brief at 5.  Further, petitioner argued that the medical records respondent cites to are dated "well-before petitioner's March 29, 2017 vaccination."  *Id.*  I agree with petitioner that the respondent has used these citations to try to create a causal link between those pre-vaccination injuries causing Petitioner's left shoulder injury. The complete medical records from March 13, 2015, used by respondent to show reduced range of motion in both shoulders, do not reference petitioner's left shoulder.  Pet. Ex. 5 at 196.

As such, petitioner has demonstrated by preponderant evidence that the pain and reduced range of motion was confined to his left shoulder as a result of the flu vaccine on March 29, 2017.

### d.  No other condition or abnormality explains petitioner's symptoms

Finally, respondent argues that petitioner's left shoulder MRI was "consistent with degenerative joint disease in his shoulder, not a SIRVA injury." Resp. Mot. at 13. The impression section of the MRI record noted, "mild anterior distal supraspinatus tendinosis. No evidence of rotator cuff tear or muscle atrophy…long head biceps intra-articular tendinosis and partial tearing…mild acromioclavicular arthrosis…[and] mild-moderate glenohumeral degenerative change."  The MRI was conducted 7 months after the vaccination,  while there is notation of arthrosis it is described as mild.  The documented clinical observations of extensive ecchymosis with significant color change, swelling and warmth are much more explanatory of the petitioner's pain than findings of mild arthrosis.  Further, as a result of the ongoing pain and discomfort in his left shoulder, petitioner received a steroid injection in his left shoulder on October 5, 2018.  Pet. Ex. 22 at 1301-03.

In similar SIRVA cases, "…the vast majority of SIRVA claims where petitioners undergo an MRI of the affected shoulder, there is evidence of degenerative symptoms of the shoulder, especially in certain specific age groups of the population. *Werning v. Sec'y of Health & Human Servs*., No. 18-1267V, 2020 WL 5051154, at 11 (Fed. Cl. Spec. Mstr. July 27, 2020). In the *Werning* case the petitioner was 67 at the time of the imaging, and here the petitioner was 49 years old at the time of MRI imaging.  Therefore, "[i]t is not uncommon to find such evidence of degeneration of the shoulder on an MRI scan, and it does not rise to the level of a disqualifying fact for purposes of establishing a SIRVA claim." *Id.  See also Fry v. Sec'y of Health & Human Servs.,* No. 18-1091V, 2020 WL 8457671 (Fed. Cl. Spec. Mstr. Dec. 16, 2020) (noting that degenerative findings on petitioner's MRI "do not rise to the level of a disqualifying fact for the purposes of establishing a Table SIRVA case.")   Further, other SIRVA cases have noted that the S. Atanasoff article, which respondent relied upon in creating the QAI for SIRVA notes that:

In general, chronic shoulder pain with or without reduced shoulder joint function can be caused by a number of common conditions including impingement syndrome, rotator cuff tear, biceps tendonitis, osteoarthritis and adhesive capsulitis.  In many cases these conditions may cause no symptoms until provoked by trauma or other events.  Reilly et al. reviewed a series of shoulder ultrasound and MRI studies obtained in asymptomatic person past middle age and found partial or complete rotator cuff tears in 39% of those individuals.  There, some of the MRI findings in our case series, such as rotator cuff tears, may have been present prior to vaccination and became symptomatic as a result of vaccination-associated synovial inflammation.

*See Lang v. Sec'y of Health & Human Servs.,* No. 17-995V, 2020 WL 7873272, at *12-13 (Fed. Cl. Spec. Mstr. Dec. 11, 2020) (citing S. Atanasoff et al., *Shoulder Injury Related to Vaccine Administration (SIRVA),* 28 Vaccine 8049, 8051 (2010).  Respondent has not offered expert testimony to support degenerative arthritis as a cause of sudden onset swelling, pain and bruising at the injection site or of the consistent records of pain and reduced range of motion in the shoulder after the injection.   As such, I find respondent's argument that the likely cause of petitioner's pain was degenerative arthritis unsupported and unpersuasive.

Respondent additionally argues that petitioner's carpal tunnel release surgery and involvement in a serious altercation with his cellmate two weeks after the vaccination appear to be the more likely cause of petitioner's left shoulder pain and limited ROM.  Resp. Mot. at 14.

The carpal tunnel release surgery was in response to "bilateral carpal tunnel syndrome," which indicates both right and left wrists were impacted by carpal tunnel. Pet. Ex. 5 at 41. Prior to the vaccination at issue, on February 23, 2017, petitioner had a left CTR surgery. Pet. Ex. 5 at 152. On May 28, 2017, petitioner declined CTR surgery on his right wrist, even though it was medically indicated, because his left shoulder was frozen "and if he had it done [he] would not have use of either arm." Pet. Ex. at 35.  As a result of the carpal tunnel release surgery, petitioner started physical and occupational therapy on March 9, 2017. Pet. Ex. 5 at 144-48.  Carpal tunnel surgery generally addresses pain or numbness in the wrist area where the carpal tunnel is located. Carpal tunnel symptoms generally do not extend to the shoulder. The documented carpel tunnel syndrome was not caused by the vaccination and the carpel tunnel syndrome did not cause his left shoulder pain.

Finally, respondent's argument that the altercation with his cellmate on April 10, 2017, was the cause of petitioner's left shoulder injury is equally unpersuasive.  The altercation involved a punch to the face and not a shoulder injury.  Pet. Ex 3 at 38.  On April 14, 2017, the progress notes indicate that the petitioner was doing better and had "no facial pain." *Id*.  There is no indication in the medical records that petitioner's left shoulder was impacted during the altercation.

Petitioner went to physical therapy for his left shoulder, received a steroid injection in his left shoulder, and had MRI imaging on his left shoulder.  The course of petitioner's onset of symptoms and the treatment are consistent with other SIRVA cases in the program.  Based on the records of petitioner's ongoing treatment summarized above, petitioner has demonstrated by

preponderant evidence that no other condition or abnormality was the cause of petitioner's left shoulder injury post-flu vaccination on March 29, 2017.

### e.  Factor unrelated

Pursuant to the Vaccine Act, once petitioner has met his *prima facie* burden of demonstrating a Table Injury, respondent may still prove the condition is "due to factors unrelated to the administration of the vaccine described in the petition."  § 300aa-13(a)(1)(B).  In this case, the court is left with a documented report of shoulder pain, with deltoid slightly warm, swelling, lump at insertion site, bruising noted around insertion site, and limited ROM of left shoulder.  The argument that the petitioner's medical records do not provide the requisite evidence to establish that the flu vaccine was in fact the cause of his alleged injury is not persuasive given the medical records.  The argument that petitioner had left shoulder pain as a result of a previous injury is unpersuasive as the medical records do not indicate the left shoulder was implicated in the injury.  Additionally, the argument as to the carpal tunnel release surgery and altercation with his cellmate was unpersuasive considering the consistent attribution of pain in petitioner's left shoulder following vaccine administration.

## V.      Conclusion

For all the reasons discussed above, after weighing the evidence of record within the context of this program, I find by preponderant evidence that petitioner suffered a SIRVA Table Injury following his March 29, 2017 flu vaccination as alleged. A separate damages order will be issued.

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>
Thomas L. Gowen
Special Master